UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David Laurence Hodges, | Case No. 0:20-cv-00090-WMW-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Minnesota Department of Correctins, et al. | |
| Defendants. | |

This matter is before the Court on the Motion to Dismiss by Defendants Centurion of Minnesota, LLC, and Darryl Quiram, MD (collectively "Centurion Defendants"). Mot. to Dismiss, ECF No. 7. The Centurion Defendants argue that the Plaintiff, David Laurence Hodges, has failed to allege sufficient facts from which deliberate indifference to a serious medical need can plausibly be inferred, and his Complaint should be dismissed for failure to state a claim.[1] Defs.' Mem., ECF No. 14. For the reasons that follow, the Court recommends that the motion to dismiss be denied.

---

[1] The Centurion Defendants originally argued that Mr. Hodges' negligence and medical-malpractice claims had to be dismissed because he had not provided the expert-review affidavit required under Minnesota law. Defs.' Mem. at 7–9. Counsel for Mr. Hodges subsequently provided the affidavit and represented that the Centurion Defendants agreed to withdraw that portion of the motion. Pl.'s Mem. at 1-2, ECF No. 18. The Centurion Defendants did not address this issue in their reply memorandum, so this Court will treat it as withdrawn.

## I.   Background[2]

Mr. Hodges is currently an inmate at the Minnesota Correctional Facility ("MCF") in Moose Lake, Minnesota. Compl. ¶ 3, ECF No. 1-1. Defendant Darryl Quiram, MD, is an employee of Defendant Centurion, LLC. Dr. Quiram works as a physician in the Minnesota Department of Corrections ("DOC") prison system, providing direct care to inmates. *Id.* ¶ 13. Centurion provides medical services to prisoners in the DOC prison system pursuant to contractual agreements. *Id.* ¶ 12.

In September of 2018, Mr. Hodges was in the custody of the Minnesota DOC at MCF Rush City. *Id.* ¶ 15. On September 18th, another inmate, Courtney Osgood, entered Mr. Hodges' cell with a homemade knife (or "shank"). *Id.* Osgood attempted to attack Mr. Hodges with the shank and tore out Mr. Hodges' dreadlocks, but Mr. Hodges managed to avoid being stabbed by throwing hot water on his alleged attacker. *Id.* Corrections officers who heard Mr. Osgood scream ignored the incident despite the fact that he was improperly in Mr. Hodges' cell. *Id.* ¶ 16.

After the fight, Mr. Hodges was concerned that Osgood was part of a gang, which planned to retaliate against Mr. Hodges. *Id.* ¶ 17. He had his fiancé contact prison officials on September 24, 2018 to report the incident and communicate his safety concerns to DOC Lieutenant Randy Erdman. *Id.* ¶ 18. This led another corrections officer, Lieutenant Gene Olson, to serve disciplinary charges on Mr. Hodges, who later explained that he was acting in self-defense and remained concerned for his safety. *Id.*

---

[2]   Because the Centurion Defendants seek dismissal pursuant to Rule 12(b)(6), the following facts taken from the Complaint are taken as true for purposes of the motion to dismiss.

2

Mr. Hodges asked Lieutenant Olson to move him out of the unit with Mr. Osgood and his associates because of the fear of retaliation. *Id.* ¶ 19. Lieutenant Olson agreed that Mr. Hodges should be moved, but the DOC imposed 40 days in segregation as discipline for the fight. *Id.* ¶¶ 19-20.

While Mr. Hodges was in segregated confinement, he and his family members informed DOC officials, including Defendants Cathy Nielsen, Ashlee Berts, Derek Gunderson, Stacy Olson, and Jeffrey Titus, on several occasions that he was concerned for his safety and asked that he be transferred to another prison or moved to a different unit from Mr. Osgood. *Id.* ¶ 21-22. A committee consisting of unidentified DOC officials considered whether Mr. Hodges should be ordered separated from Osgood, but on September 26, 2018, they recommended that no action be taken. *Id.* ¶ 24.

Mr. Hodges was released from disciplinary segregation on November 3, 2018 and returned to a cell in the same living unit as Mr. Osgood. *Id.* ¶ 29. Soon thereafter, Osgood and another inmate "rushed at Mr. Hodges and physically attacked him. Osgood threw at Mr. Hodges a cup containing … water and capsaicin cream that Osgood had heated in his mirco wave oven. The chemical mixture went into Mr. Hodges' face and eyes, shoulders and chest." *Id.* ¶ 30. It took several minutes for corrections officers to intervene while Osgood and the other inmate repeatedly struck Mr. Hodges in the face and elsewhere. *Id.* Eventually, Mr. Hodges lost consciousness when he fell to the ground and struck his head, corrections officers broke up the fight, and Mr. Hodges was taken to the hospital. *Id.* ¶¶ 30-31.

As a result of the attack, Mr. Hodges suffered a fractured nose and second degree burns to his chest and face and inside his eyes. *Id.* ¶ 32. He suffered corneal injuries, continues to experience headaches, blurred vision in his right eye, and almost complete loss of vision in his left eye. *Id.* His injuries also include permanent scarring. *Id.* ¶ 33.

"At the hospital, Mr. Hodges was referred to an ophthalmologist for follow up treatment for his eye injuries. However, medical staff at DOC never sent Mr. Hodges to an ophthalmologist, despite continued loss of vision…." *Id.* ¶ 35. Defendant Darryl Quiram, MD, "arranged appointments with an optometrist bu[t] refused to send [Mr. Hodges] to an ophthalmologist." *Id.* ¶ 36.

In early September 2019, Mr. Hodges was transferred to MCF Moose Lake, where he continued to ask to see an eye doctor to evaluate and treat his loss of vision. *Id.* ¶¶ 37-38. He was scheduled to see an eye doctor in late October of 2019, "but was given the pass after the appointment and therefore could not see the doctor." *Id.* ¶ 39.

Pursuant to 42 U.S.C. § 1983, Mr. Hodges claims that the Centurion Defendants and others violated his Eighth Amendment rights by being deliberately disregarding his serious medical needs, including "by failing to arrange for medical care by a specialist qualified to evaluate and treat his loss of vision." *Id.* ¶ 42 (Count 1). He also claims that the Defendants violated his First Amendment rights to free speech and to petition for redress of grievances by refusing to provide Mr. Hodges with necessary medical attention for his loss of vision in retaliation for reporting the initial attack by Mr. Osgood and requesting protection. *Id.* ¶ 43 (Count 2). Next, in relevant part, Mr. Hodges claims that the Centurion Defendants negligently refused to provide him with adequate medical

treatment for his loss of vision. *Id.* ¶ 44 (Count 3). And finally, he alleges that Centurion is liable for medical malpractice by refusing to arrange for him to see a medical specialist qualified to evaluate and treat his injuries. *Id.* ¶ 45 (Count 4).

## II.   Legal Standards

A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Before filing an answer, a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive such a motion, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint containing labels and legal conclusions does not satisfy this plausibility standard. *Id.* Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When applying this standard, courts take the factual allegations in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). The complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### III. Analysis

The Centurion Defendants seek dismissal of Mr. Hodges' Eighth Amendment deliberate-indifference claim and his First Amendment retaliation claim. For the reasons that follow, the Court concludes that their motion to dismiss should be denied.

#### A. Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment prohibits the "deliberate indifference to serious medical needs" of prisoners. *Estelle v. Gamble*, 429 US. 97, 106 (1976). A deliberate-indifference claim "involves both an objective and a subjective component. The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "Medical malpractice alone … is not actionable under the Eighth Amendment." *Popalii v. Correctional Medical Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). Nevertheless, a "plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, … showing a defendant's decision to take an easier and less efficacious course of treatment, … or showing a defendant intentionally delayed or denied access to medical care." *Allard*, 779 F.3d at 772 (citations omitted).

The Centurion Defendants argue that Mr. Hodges' Eighth Amendment claim should be dismissed because he has merely alleged disagreement over a treatment decision. Specifically, the Centurion Defendants argue that Mr. Hodges' factual allegations show that he received medical treatment from Dr. Quiram and simply

6

disagrees with the decision to refer him to an optometrist rather than an ophthalmologist. Defs.' Mem. at 5–7. The Court disagrees that Mr. Hodges has alleged no more than a mere disagreement with a treatment decision.

In support of their argument, the Centurion Defendants include a lengthy string cite to several cases that repeat the general proposition that a deliberate-indifference claim "requires more than mere disagreement with treatment decisions." *E.g.*, *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). While correctly stating a broad legal principle, the Court concludes that these decisions do not require dismissal of Mr. Hodges' claims for several reasons. For example, although *Jones* includes the general proposition discussed above, it does not directly apply that rule. The *Jones* court affirmed a summary-judgment decision in favor of officials where the plaintiff failed to present evidence from which a reasonable jury could find an objectively serious medical need. *See id.* at 482–83. Similarly, in *Popoalii*, the court affirmed a summary-judgment decision in favor of prison officials without clearly relying on the proposition that it takes more than a disagreement with a treatment decision to establish deliberate indifference. 512 F.3d at 499–500. Rather, the court found that the plaintiff failed to present evidence showing that the defendants were more than grossly negligent, that the failure to be more diligent in obtaining her medical records did not show deliberate indifference, and that placing her in isolation based on behaviors that were symptoms of an undiagnosed condition did not support her claim. *Id.* Beyond the repetition of this general standard, the

actual analysis contained in these cases provides little guidance for how this Court should analyze Mr. Hodges' allegation that an optometrist is incapable of treating his condition.[3]

The Centurion Defendants' reliance on *Corwin v. City of Independence*, 829 F.3d 695 (8th Cir. 2016), is closer to the mark, but the Court finds that it does not support dismissal of Mr. Hodges' deliberate-indifference claim under Rule 12(b)(6). In *Corwin*, the plaintiff arrived at a facility with an injured hand and claimed that he received inadequate care form a prison nurse. *Id.* at 697. On appeal from a summary-judgment decision in favor of the defendants, the Court of Appeals affirmed, noting that the nurse: "examined his hand, prescribed over-the-counter pain medication, and applied an ACE bandage wrap to his hand. [She] also placed Corwin's complaint form in a certain folder that had the effect of placing him on the list of prisoners to be transported to see the detention facility's contract doctor." *Id.* at 698. Although the plaintiff argued that the nurse "should have provided more aggressive treatment for his injured hand, [the court held that] this asserts only a claim of negligence which is insufficient to maintain a section 1983 claim." *Id.*

For two reasons, the Court finds *Corwin* inapposite. First, *Corwin* does not stand for the broad proposition that a deliberate-indifference claim fails as a matter of law

---

[3] In *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988) (per curiam), the court concluded that the district court properly dismissed a deliberate-indifference claim premised upon the allegation that the plaintiff was prescribed a medication he did not believe he needed, noting that a mere disagreement with a treatment decision was insufficient to sustain such a claim. However, the opinion contains no analysis of what is required to adequately state a claim, and unlike Mr. Hodges, there is no indication that the plaintiff alleged the prescribed course of treatment was incapable of addressing his condition.

whenever it is based on an allegation that a medical provider provided substandard treatment. Indeed, the Eighth Circuit Court of Appeals has rejected the notion that a deliberate-indifference claim can never exist where an inmate has been provided some medical care. *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). In *Smith*, the court explained "[w]hile it is true that courts hesitate to find an eighth amendment violation when a prison inmate has received medical care, … that hesitation does not mean ... that the course of a physician's treatment of a prison inmate's medical or psychiatric problems can never manifest the physician's deliberate indifference to the inmate's medical needs." *Id.* (cleaned up). Adopting the Centurion Defendants' argument at this stage would be contrary to such a rule.

As importantly, *Corwin*, like many other cases cited in favor of the Centurion Defendants' motion, is a summary-judgment decision. Evaluating the claim that Dr. Quiram's referral to an optometrist exhibited deliberate indifference to Mr. Hodges' serious medical needs is hampered by the lack of an evidentiary record at this stage. Without a more developed record, the Court cannot decide, as a matter of law, whether Dr. Quiram's failure to refer Mr. Hodges to an ophthalmologist "so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual punishment." *Cf. Smith*, 919 F.2d at 93 ("Smith is entitled to prove his case by establishing that Dr. Oglesby's course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel

and unusual punishment."). The better time to evaluate the Centurion Defendants' argument is at summary judgment.[4]

Finally, the Centurion Defendants cite *Smith v. U.S.*, No. 13-cv-3277, 2015 WL 278252, at *13–15 (D. Minn. Jan. 22, 2015). There, the court dismissed the Complaint after determining that the plaintiff's allegations suggested only that medical providers exercised their professional judgment in providing treatment with which the plaintiff disagreed. *Id.* at *14 (quoting *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996)). Here, Mr. Hodges' Complaint alleges that Dr. Quiram's referral to an optometrist exhibited deliberate indifference because "[a]n optometrist lacks the skill and training to treat and evaluate Mr. Hodges' loss of vision." Compl. ¶ 36. Evaluating the sufficiency of a complaint is a "context-specific task." *Iqbal*, 556 U.S. at 679. Taking all reasonable inferences from the factual allegations in Mr. Hodges' favor, it is reasonable to infer at this stage that Dr. Quiram did not exercise professional judgment in his referral, but deliberately disregarded Mr. Hodges' serious medical need for treatment for his loss of vision.

For these reasons, the Court recommends that the motion to dismiss the deliberate-indifference claim against the Centurion Defendants be denied.

---

[4] Several other cases cited by the Centurion Defendants were also decided at or after the summary judgment stage, and the Court finds them less persuasive for the same reasons that *Corwin* fails to carry the day. *See Pietrafeso v. Lawrence County*, 452 F.3d 978, 983 (8th Cir. 2006) (affirming district court's entry of judgment as a matter of law in favor of defendants following the close of the plaintiff's case at trial); *Bellecourt v. U.S.*, 994 F.2d 427, 431 (8th Cir. 1993) (affirming summary judgment in favor of defendants on a deliberate-indifference claim); *LaFountaine v. Reishus*, No. 13-cv-355, 2014 WL 4248437, at *20 (D. Minn. Aug. 27, 2014) (order adopting report and recommendation for summary judgment in favor of defendants).

### B. First Amendment Retaliation Claim

In their opening memorandum, the Centurion Defendants did seek dismissal of Mr. Hodges' First Amendment retaliation claim for failure to state a claim. However, in their reply memorandum, they argued, for the first time, that Mr. Hodges failed to state such a claim. Defs.' Reply at 6-10.[5] Issues raised for the first time in a reply brief are generally deemed to have been waived. *Black v. Indep. Sch. Dist. No. 316*, 476 F. Supp. 2d 1115, 1121 n.6 (D. Minn. 2007) (declining to consider an argument raised for the first time in the defendant's summary judgment reply brief). Admittedly, Mr. Hodges' retaliation claim against the Centurion Defendants is quite thin, and many of the points they raise in their reply memorandum may well provide a basis for the claim to be rejected at a later point in this action. But the Centurion Defendants did not move to dismiss the retaliation claim, and raising the issue for the first time in their reply brief deprived Mr. Hodges of an opportunity to respond to the arguments they have made. Therefore, the motion to dismiss should be denied with respect to this claim.

### RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED THAT** the Motion to Dismiss by Defendants Centurion of Minnesota, LLC, and Darryl Quiram, MD **(ECF No. 7)** be denied.

---

[5] The Centurion Defendants assert that "the Complaint does not articulate a retaliation claim against [them]." Defs.' Reply at 6. The Court disagrees. Reading the Complaint as a whole, Mr. Hodges intended to assert such a claim against the Centurion Defendants. *See* Compl. ¶ 39 (alleging that the Centurion Defendants' "conduct was intended to deprive Mr. Hodges of needed medical care and to retaliate against him for pursuing grievances over his lack of care"); *id.* ¶ 43 (articulating the retaliation claim against all defendants).

Date: May 28, 2020

                                                            *s/Katherine Menendez*
                                                            Katherine Menendez
                                                            United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.