UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| David Laurence Hodges, | Case No. 20-cv-0090 (WMW/KMM) |
| Plaintiff, | |
| v. | **ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| State of Minnesota Department of Corrections et al., | |
| Defendants. | |

---

This matter is before the Court on the July 29, 2021 Report and Recommendation (R&R) of United States Magistrate Judge Katherine M. Menendez. (Dkt. 179.) The R&R recommends granting in part and denying in part Defendants' motions for summary judgment and declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Plaintiff David Laurence Hodges and Defendant Centurion of Minnesota, L.L.C. (Centurion), each filed timely objections to the R&R. For the reasons addressed below, the objections of Hodges and Centurion are overruled and the R&R is adopted in full. Accordingly, Defendants' motions for summary judgment are granted in part as to Hodges's federal-law claims and denied in part without prejudice as to Hodges's state-law claims, and the state-law claims are remanded to Ramsey County District Court, Second Judicial District.

# BACKGROUND[1]

Hodges is an inmate in the custody of Defendant State of Minnesota Department of Corrections (DOC). Defendants include the DOC and eight DOC employees[2] (collectively, DOC Defendants). Defendant Centurion is a healthcare company that has contracted with DOC to provide medical care to DOC inmates.

At all times relevant to this case, Hodges was incarcerated at the Minnesota Correctional Facility in Rush City, Minnesota (MCF Rush City). On September 18, 2018, a fight between Hodges and another inmate, Courtney Osgood, occurred in Hodges's prison cell. Prison officials later documented this altercation and noted that both Hodges and Osgood had burns on their bodies after the altercation. Shortly after this altercation, Hodges's significant other and sister contacted the DOC to report that Hodges feared for his safety.

Prison officials investigated the altercation, including a review of the incident report and video footage recorded from outside Hodges's cell at the time of the altercation. As part of the investigation, Defendant Gene O. Olson, a lieutenant in charge of discipline at MCF Rush City, interviewed both Hodges and Osgood. Hodges told Lieutenant Olson that Osgood used a shank during the altercation and that Hodges feared

---

[1] As the R&R provides a detailed factual and procedural history, the Court briefly summarizes the background of this litigation and the facts relevant to the pending objections to the R&R.

[2] The DOC employee defendants are Ashlee E. Berts, Derek L. Gunderson, Cathy Nielson, James M. Olson, Stacy R. Olson, Gene O. Olson, Collin Gau and Jeffrey T. Titus.

2

future retaliation from Osgood and his friends. In a separate interview, Osgood told Lieutenant Olson that Hodges instigated the fight and that Osgood believed "the issue was dead." Lieutenant Olson ordered a search for the alleged shank, but prison officials did not locate it. Prison officials sentenced both Hodges and Osgood to a period of disciplinary segregation for their involvement in the altercation.

Hodges requested relocation to another prison unit or prison facility because he feared for his safety. While Hodges served his period of disciplinary segregation, the DOC continued to receive communications from Hodges's family expressing concerns for Hodges's safety and requesting that he be transferred. On September 26, 2018, MCF Rush City's "incompatibility committee" met to discuss, among other things, whether an incompatibility existed between Hodges and Osgood that warranted transferring one of the inmates to another prison facility. Lieutenant Olson served as a panel member on the incompatibility committee. After reviewing relevant information about the altercation between Hodges and Osgood, the committee unanimously decided that Hodges and Osgood were *not* incompatible, and Hodges was not transferred to another prison unit or prison facility.

Within hours after Hodges was released from disciplinary segregation on November 3, 2018, Osgood and another inmate attacked Hodges. As a result of this attack, Hodges suffered multiple injuries, including second-degree burns to his chest, face and eyes. The incompatibility committee subsequently met and determined that Hodges

and Osgood were incompatible based on this second altercation. The DOC transferred Hodges to another prison facility on November 13, 2018.

Hodges commenced this action in Ramsey County District Court, Second Judicial District, and Defendants removed the case to this Court in January 2020. Hodges advances two federal civil-rights claims, pursuant to 42 U.S.C. § 1983, and two state-law torts claims. Count 1 alleges that Defendants were deliberately indifferent to Hodges's safety and medical needs, in violation of the Eighth Amendment to the United States Constitution. Count 2 alleges that Defendants retaliated against Hodges for engaging in a constitutionally protected activity, in violation of the First Amendment to the United States Constitution. Count 3 alleges that Defendants were negligent. And Count 4 alleges that Defendants are liable for medical malpractice.

Defendants move for summary judgment as to Hodges's claims. In a July 29, 2021 R&R, the magistrate judge recommends granting Defendants' motions for summary judgment as to Hodges's federal-law claims. The R&R also recommends denying without prejudice Defendants' motions for summary judgment as to Hodges's state-law claims, declining to exercise supplemental jurisdiction over those claims, and remanding those claims to Ramsey County District Court, Second Judicial District, for further proceedings. Hodges and Centurion each filed objections to the R&R.

## ANALYSIS

A district court reviews *de novo* those portions of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1). In doing so, the district court "may accept,

4

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; *accord* Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3). Hodges objects to the R&R's recommendation to grant Defendants' motions for summary judgment as to Hodges's Eighth Amendment deliberate-indifference claim. Centurion objects to the R&R's recommendation to decline to exercise supplemental jurisdiction over Hodges's remaining state-law claims. The Court addresses each objection in turn.

## I. Hodges's Objections

Hodges objects only to one aspect of the R&R—namely, the recommendation to grant Defendants summary judgment as to Hodges's Eighth Amendment claim that Defendants acted with deliberate indifference to his safety. In particular, Hodges argues that the R&R misapplies the summary-judgment standard, misapplies the deliberate-indifference standard, and fails to consider the actions of each Defendant individually. The Court addresses each argument in turn.

### A. Summary-Judgment Standard

Hodges argues that the R&R misapplies the summary-judgment standard by failing to construe the evidence in the light most favorable to Hodges.

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When

deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

Hodges first argues that the R&R improperly relies on Lieutenant Olson's testimony. Lieutenant Olson is the only member of the incompatibility committee who could recall details about the basis for the committee's decision not to separate Hodges and Osgood. According to Hodges, the R&R errs by relying on Lieutenant Olson's testimony because a jury "could easily infer that Olson's 'explanation' was a mere post-hoc rationalization, in the absence of any specific recounting of the discussion underlying the decision" of the incompatibility committee.

On a motion for summary judgment, a court "need not ignore undisputed facts" or "recognize unreasonable inferences." *Buytendorp v. Extendicare Health Servs., Inc.*, 498 F.3d 826, 836 (8th Cir. 2007). And a court also may rely on unrebutted evidence from the moving party if the nonmoving party fails to submit contrary evidence. *Fletcher v.*

6

*Butts*, 994 F.2d 548, 549 (8th Cir. 1993) (per curiam).  Here, Lieutenant Olson and Defendant Berts, who was the chair of the incompatibility committee, summarized the types of information and factors the committee typically considers.  Lieutenant Olson presented the only detailed testimony about the basis for the incompatibility committee's unanimous decision not to separate Hodges and Osgood, stating:

> I don't remember the specifics of the discussion.  I mean, we presented what was reported.  We went over the incident report.  It was a first-time incident between the two of them.  A typical offender assault or a fight.  And as far as I know the committee determined that it did not rise to the level of an incompatibility?
>
> . . .
>
> I can only recall from going around the table that I, as the discipline supervisor, presented the report.  We discussed what both offenders told us.  Based on the situation we had one offender Hodges saying that he felt like it was.  We had the other offender saying that there wasn't.  Typically, on a first-time incident that involves two guys we do not send that down.

Lieutenant Olson also testified that nearly every inmate who is involved in a fight requests to be transferred.  And he testified that the incompatibility committee did not consider this first-time altercation between Hodges and Osgood to be serious enough to warrant a transfer in part because the committee received no proof to corroborate Hodges's allegation that Osgood attempted to stab Hodges with a shank.

The foregoing facts are unrebutted.  Hodges argues that a jury could *disbelieve* Lieutenant Olson's testimony.  But to survive summary judgment, Hodges must do more than cast doubt on the credibility of Defendants' evidence.  Hodges must "submit

7

sufficient evidence to create a genuine issue of material fact."[3] *Fletcher*, 994 F.2d at 549. Hodges offers no evidence to contradict Lieutenant Olson's testimony. Instead, Hodges presents speculation that Lieutenant Olson's testimony is "mere post-hoc rationalization" from which a jury "could easily conclude that there was no substantive consideration" of Hodges's safety concerns by the incompatibility committee. But a nonmoving party's "[s]peculation and conjecture are insufficient to defeat summary judgment." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012) (observing that plaintiff's "attempt to cast a cloud over [defendant's] evidence does not obscure the fact that [defendant's] evidence, if presented and unrebutted at trial, would easily have warranted a judgment in his favor"). Because Lieutenant Olson's testimony is unrebutted, the R&R correctly relies on this evidence. Hodges's argument to the contrary lacks merit.

Hodges also contends that the R&R "ignore[s] numerous facts that strongly support" an inference that Defendants acted with deliberate indifference to Hodges's safety. According to Hodges, the R&R fails to address several material facts, including:

> that Hodges and Osgood were or had been members of rival violent gangs, and that the fight arose from a gang dispute, at least one weapon was used if not two, that Osgood had burn marks from the fight which would provide more motivation

---

[3] Hodges faults the R&R for "accepting wholesale [Lieutenant] Olson's explanation." But it is Hodges's burden to present evidence to rebut Lieutenant Olson's explanation. *See Krenik*, 47 F.3d at 957 (observing that a nonmoving party cannot rely on mere allegations or denials, but instead must present evidence to demonstrate a genuine dispute of material fact). Even if a jury were to disbelieve Lieutenant Olson's testimony, the result would be a *lack* of evidence as to this issue, not a dispute of material fact. As a plaintiff, Hodges has the burden to present affirmative evidence to prove every element of his claims.

8

>for retaliation, [and] that Hodges and his relatives expressly and repeated[ly] stated verbally and in writing that [Hodges] was certain that there was severe danger to both him and Osgood if they were allowed together.

From these facts, Hodges contends, a jury reasonably could infer that Defendants did not take Hodges's safety concerns seriously.[4] But contrary to Hodges's argument, the R&R does *not* ignore these facts, all of which are considered in the R&R's analysis. The R&R concludes, however, that these facts—even when viewed in the light most favorable to Hodges—do not support a reasonable inference that Defendants had the requisite state of mind to support a deliberate-indifference claim. As such, Hodges's argument that the R&R ignores evidence favorable to him is without merit.

Because the R&R does not misapply the summary-judgment standard, Hodges's objection on this basis is overruled.

### B. Deliberate-Indifference Standard

Hodges next argues that the R&R misapplies the deliberate-indifference standard by concluding that the circumstantial evidence in this case does not support a reasonable inference that Defendants had the requisite state of mind to support a deliberate-indifference claim.

To prove deliberate indifference to an inmate's safety, a plaintiff must demonstrate that a prison official "[knew] of and disregard[ed] a substantial risk of serious harm to an

---

[4] In his objections, Hodges also contends that, during his first altercation with Osgood, "[t]here was loud screaming which the guards should have heard and responded to, but ignored." Hodges presents no evidence that anyone heard and ignored any screaming. Nor does the evidence presented permit a reasonable inference to support this suggestion. Hodges's mere speculation is insufficient to create a genuine dispute of fact.

inmate." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (internal quotation marks omitted). To do so, a plaintiff must prove both an objective element and a subjective element. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). As to the objective element, a plaintiff must prove that "the deprivation of rights [is] sufficiently serious" such that the "conditions [pose] a substantial risk of serious harm." *Id.* (internal quotation marks omitted). As to the subjective element, a plaintiff must prove that the prison official had a "sufficiently culpable state of mind" in that the official was "deliberately indifferent to the substantial risk of serious harm." *Id*. at 446–47 (internal quotation marks omitted). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* at 447 (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994)).

Here, the objective element of Hodges's deliberate-indifference claim is undisputed. But Hodges contends that the R&R misapplies the subjective element of his deliberate-indifference claim. This element "requires proof of a reckless disregard of [a] known risk." *Reynolds*, 636 F.3d at 979. Under this standard, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. This standard is met if there is evidence that prison officials "acted or failed to act despite their knowledge of a substantial risk of serious harm." *Id.* at 842. A plaintiff may prove that a prison official had the requisite knowledge through circumstantial evidence that the substantial risk of serious harm was "longstanding, pervasive, well-documented,

10

or expressly noted by prison officials in the past." *Id.* However, "mere negligence or inadvertence does not rise to the level of deliberate indifference" because "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (internal quotation marks omitted). A prison official's state of mind "must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Id.* (internal quotation marks omitted).

Hodges contends that a genuine dispute of material fact exists because the record contains circumstantial evidence that Defendants failed to act despite their knowledge of a substantial risk of serious harm to Hodges. The R&R acknowledges that the evidence, viewed in the light most favorable to Hodges, would permit a reasonable jury to conclude that the September 18 fight between Hodges and Osgood created a safety concern. But the R&R concludes that the circumstantial evidence does *not* support a reasonable inference that Defendants subjectively knew that a substantial risk of serious harm to Hodges existed. Instead, according to the R&R, the unrebutted evidence demonstrates that Defendants reasonably concluded, based on the information available to them at the time, that Hodges and Osgood did not need to be separated.

According to Hodges, the "R&R seems to confuse weak and self-serving evidence with 'unrebutted evidence.' " This argument is unpersuasive. The fact that evidence might be weak or self-serving does prevent that evidence from also being unrebutted. *See, e.g.*, *Gannon Int'l*, 684 F.3d at 792 (affirming summary judgment decision and observing that defendant's evidence "may have been 'self-serving,' but [it was] also

11

unrebutted"). When "evidence is uncontradicted, it can (and should) form the basis for judgment," and "[s]imply dismissing such evidence as self-serving is precisely the sort of metaphysical doubt that will not suffice to oppose summary judgment." *Id.* (internal quotation marks omitted). Hodges correctly observes that there is unrebutted evidence that Hodges and Osgood were involved in a fight, that both Hodges and Osgood were burned with hot water during that fight, and that Hodges and his family told prison officials that Hodges believed he was in danger. And it is undisputed that Hodges told prison officials that the fight was gang-related and that Osgood attempted to stab Hodges with a shank during the fight. But these are not the only material unrebutted facts.

Similarly unrebutted is the fact that prison officials investigated the altercation between Hodges and Osgood. In doing so, prison officials considered, among other things, the written incident report, video footage of the altercation, interviews with both Hodges and Osgood, the fact that both Hodges and Osgood were burned with hot water during the altercation, and the fact that Hodges and his family expressed concern for Hodges's safety. Prison officials attempted to verify Hodges's allegation that Osgood attempted to stab Hodges with a shank but were unsuccessful in doing so. Lieutenant Olson also testified that the alleged gang affiliations of Hodges and Osgood were considered. But, according to Lieutenant Olson, this fact was insufficient to demonstrate a safety concern severe enough to warrant separation because there are "rival gangs everywhere" in the prison, inmates assault each other "every day," and inmates "quite often" request transfer after a fight occurs. The record reflects that prison officials also

considered the fact that the fight between Hodges and Osgood was a "first-time incident" and that, although Hodges expressed fear for his safety, Osgood told prison officials that he believed the dispute had been put to rest. Because Hodges presents no evidence contradicting these facts, there is unrebutted evidence that prison officials considered the totality of these circumstances when they determined that separating Hodges and Osgood was unnecessary. Hodges's characterization of this evidence as "weak" and "self-serving" does not make it any less unrebutted. *See, e.g.*, *Gannon Int'l*, 684 F.3d at 792.

Viewing this unrebutted evidence in the light most favorable to Hodges, a reasonable jury could not infer that Defendants subjectively knew that a substantial risk of serious harm to Hodges existed and failed to take reasonable action despite this knowledge. *See Buytendorp*, 498 F.3d at 836 (recognizing that, when granting summary judgment, a court "need not ignore undisputed facts" or "recognize unreasonable inferences"). The unrebutted evidence demonstrates that prison officials investigated the altercation, gathered and considered relevant information, and subjectively concluded that Osgood did not pose a substantial risk of serious harm to Hodges that warranted separating them. The fact that this conclusion proved to be incorrect does not demonstrate that Defendants recklessly or intentionally ignored an obvious risk. *Kulkay*, 847 F.3d at 643 (observing that deliberate indifference requires more than negligence or inadvertence, and a prison official's state of mind must be evaluated based on the official's knowledge at the relevant time, not by hindsight).

Nor do the unrebutted facts support a reasonable inference that prison officials "did not respond reasonably to the risk" known to them. *Young v. Selk*, 508 F.3d 868, 874 (8th Cir. 2007). Contrary to Hodges's arguments, the evidence does not reasonably suggest that prison officials "blew him off" or "did not take any action" to address his safety concerns. *Id.* at 871 (internal quotation marks omitted). Hodges attempts to equate the denial of his transfer request as evidence that Defendants "did nothing" in response to his safety concerns. But the record belies this argument. The undisputed record demonstrates that Defendants investigated the altercation, gathered and considered relevant information (including Hodges's transfer request and the concerns of Hodges and his family), and acted based on the information available to them. On this record, a jury could not reasonably conclude that Defendants "did nothing."

Accordingly, the R&R does not misapply the deliberate-indifference standard, and Hodges's objection on this basis is overruled.

### C. Individualized Consideration of Defendants' Liability

Hodges next argues that the R&R fails to consider the liability of each Defendant individually. According to Hodges, because the R&R primarily relies on Lieutenant Olson's testimony, the evidence does not demonstrate that summary judgment is warranted as to five other DOC Defendants—namely, Ashlee E. Berts, Derek L. Gunderson, Stacy R. Olson, Jeffrey T. Titus, and Collin Gau.

Berts testified that she was a member of the incompatibility committee with Lieutenant Olson. Although uncertain, Gunderson testified that he might also have been

a member of the committee. Lieutenant Olson's unrebutted testimony establishes that the incompatibility committee gathered and considered relevant information and unanimously concluded that Osgood did not pose a risk of serious harm to Hodges that warranted separating them. Hodges presents no evidence suggesting that the incompatibility committee's decision was not unanimous or that Berts, Gunderson, or any other committee member held a subjective belief that differed from the committee's collective decision.

In addition, there is no evidence that Stacy Olson, Titus, or Gau was on the incompatibility committee or otherwise directly involved in investigating or responding to the altercation between Hodges and Osgood. Liability under Section 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). At most, the evidence demonstrates that these individuals received and relayed relevant information to the incompatibility committee and deferred to the committee's decision. *Cf. Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021) (recognizing that prison officials may defer to other officials' determinations about safety risks when deciding whether to relocate inmates). Hodges identifies no evidence establishing that these prison employees had knowledge that Osgood posed a risk of serious harm to Hodges, subjectively believed that such a risk existed, or failed to act reasonably based on the facts known to them.

For these reasons, Hodges's objections are overruled.

## II. Centurion's Objection

Centurion objects to the R&R's recommendation that the Court decline to exercise supplemental jurisdiction over Hodges's two remaining state-law claims, which allege negligence and medical malpractice.

A district court may decline to exercise supplemental jurisdiction over a plaintiff's state-law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A district court's decision to exercise supplemental jurisdiction is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity." *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The R&R considers the relevant factors and acknowledges that some of the factors support retaining jurisdiction over Hodges's state-law claims. Indeed, Hodges's state-law claims are factually related to his federal claims, and this Court has expended judicial resources on this case. But the R&R concludes that, in their totality, the relevant factors—judicial economy, convenience, fairness, and comity—do not warrant retaining supplemental jurisdiction over Hodges's state-law claims. Centurion disagrees.

Centurion first contends that this Court should retain jurisdiction to promote judicial economy. Because this case has reached the summary-judgment stage, Centurion argues, this Court has familiarized itself with the relevant facts and the parties have

briefed and argued the issues pertaining to Hodges's state-law claims. But these circumstances alone do not require a federal court to retain supplemental jurisdiction when no federal-law claim remains. *See Willman v. Heartland Hosp. E.*, 34 F.3d 605, 613 (8th Cir. 1994) ("[W]e have upheld the refusal to exercise jurisdiction over a state-law claim even though the federal claims were disposed of late in the proceedings and the court had already devoted significant judicial resources to the state claim."). Because the "judicial resources of the federal courts are sparse compared to the states," district courts must "exercise judicial restraint and avoid state law issues wherever possible." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (affirming district court's decision to remand state-law issues to state court). Moreover, as the R&R correctly observes, none of this Court's prior decisions in this case involved the legal standards relevant to Hodges's remaining state-law claims. Nor has this Court addressed whether any of the Defendants are entitled to immunity under Minnesota law. Although this Court clearly has devoted judicial resources to this case, most of those resources have been devoted to Hodges's federal-law claims. Thus, the judicial-economy factor does not warrant retaining jurisdiction.

According to Centurion, a remand would be inconvenient and unfair for the parties because they would be forced to duplicate their efforts by re-briefing and re-arguing the merits of Hodges's state-law claims in state court. But the parties' efforts in this Court will not be wasted. As the R&R correctly observes, the parties have completed discovery and the efforts they have expended in this Court can be used in future state-court

proceedings. Moreover, state court was Hodges's initial choice of forum, and Ramsey County District Court is no less convenient than the Saint Paul Federal Courthouse. Therefore, the convenience and fairness factors do not warrant retaining jurisdiction.

Centurion does not expressly address the comity factor but contends that Hodges's remaining state-law claims do not involve complex or unsettled aspects of state law. Even if a plaintiff's state-law claims can easily be resolved, however, "federal courts should exercise restraint in not unnecessarily resolving state claims." *Magee v. Trs. of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1061 (D. Minn. 2013); *accord Ivy v. Kimbrough*, 115 F.3d 550, 552–53 (8th Cir. 1997) (explaining that, when all federal claims are dismissed, a federal court ordinarily should "avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties' " (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966))). A Minnesota state court is the more appropriate forum to decide issues of Minnesota state law, especially given that this Court has yet to expend any resources addressing the merits of those state-law issues. As such, the comity factor does not warrant retaining jurisdiction.

Because the relevant factors—judicial economy, convenience, fairness, and comity—do not warrant retaining supplemental jurisdiction over Hodges's state-law claims, Centurion's objections to the R&R are overruled.

### III. Clear-Error Review

As no party specifically objects to any other aspect of the R&R, the Court reviews the remainder of the R&R for clear error. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th

Cir. 1996) (per curiam); see also Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Having carefully performed this review, the Court finds no clear error. For this reason, the Court adopts the R&R in full.

## ORDER

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Centurion of Minnesota, L.L.C.'s objections to the July 29, 2021 R&R, (Dkt. 183), are **OVERRULED**;

2. Plaintiff David Laurence Hodges's objections to the July 29, 2021 R&R, (Dkt. 184), are **OVERRULED**;

3. The July 29, 2021 R&R, (Dkt. 179), is **ADOPTED**;

4. Defendants' motions for summary judgment, (Dkts. 115, 137), are **GRANTED IN PART** as to Hodges's federal-law claims (Counts 1 and 2) and **DENIED IN PART** without prejudice as to Hodges's state-law claims (Counts 3 and 4); and

5. This matter is **REMANDED** to Ramsey County District Court, Second Judicial District, pursuant to 28 U.S.C. § 1367(c)(3).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 22, 2021                    s/Wilhelmina M. Wright
                                                                             Wilhelmina M. Wright
                                                                             United States District Judge